The case for argument this morning is 14-1349 E-LYNXX Corporation v. InnerWorkings. Mr. Nicholson, whenever you're ready. Good morning, Your Honor. Darren Nicholson on behalf of E-LYNXX Corporation. May it please the Court, at its heart this is an appeal about claim construction. There are three principal reasons why this Court should reverse and demand the District Court's entry of summary judgment. The first issue is the District Court misconstrued the claim to claim buyer in claim construction. The second issue is that the District Court disregarded its claim construction with the so-called vendor pool limitation and instead imposed a new limitation in summary judgment. And the third issue, the District Court erred in its construction of the term vendor capability data. Finding a disclaimer in the prosecution history where none existed. As the Court obviously knows from the briefing, the first two issues that I've identified relate specifically to Appellee InnerWorkings. The third issue relates to Appellee Circuit. Turning to the first issue, the District Court construed the term buyer to mean the ultimate purchaser of a customized good or service. And I think there's two initial observations one can make about that particular construction. The first is the use of the word purchaser is totally unnecessary. Purchaser and buyer are synonyms just as the root words buy and purchase mean the same thing. Let me ask you a question. Yes, Your Honor. I'd like to give people a chance to clarify things. In the red brief at page 23, InnerWorking says that although the e-linked claims that the parties agreed to the terms, and that is the term buyer, to the terms plain meaning by citing the same dictionary definition of buyer, e-link simply ignores the fact that the definition of pro offers two different meanings, one who buys and one who consumes, one of which encompasses intermediaries to deal with that claim. Yes, it is true that in the definition of the word buyer it means one who buys or a consumer. The difference is that in claim construction, no one argued or proffered a definition of the word consumer. It wasn't discussed or even addressed with the District Court. Furthermore, the patents, the specification, the prosecution history, the claims don't address the word consumer, don't even use the root word consume. And when one looks at the patents in their totality, the purpose of the patents is to facilitate a transaction between a buyer on the one hand and a vendor or a seller on the other. It really doesn't speak to consumption or use at all. So you felt free to simply ignore that part of it? Well, it wasn't ignoring that part of the definition that's clearly in there as part of the definition, but it's an and. It could mean both of those things. And obviously, depending upon the context, the buyer may, in certain circumstances, mean a consumer. But there is simply absolutely nothing to suggest in the specification, the claims, or the prosecution history what the fundamental purpose of the patent, that it really had anything to do with the meaning of the word consumer. Except that the District Court judge did look at the context of the claim term and did, part of his construction was based on the fact that the claim also recited buyer or behalf of a buyer. And so he thought those words would be rendered superfluous under your definition. That seems to make sense to me. Why does that not make sense? That doesn't make sense for a couple of reasons. First, in ordinary usage, when one does something on behalf of a principal, the phrase on behalf of doesn't define the principal. I'm here today on behalf of my client. That tells you something about me, a third party. I'm a lawyer. I'm here as a representative. But it doesn't tell you anything about the client. The client may be a lawyer or may not. The client may be an intermediary or not. In ordinary usage, on behalf of doesn't define the principal. Specifically, in how it's used in the claims, on behalf of doesn't even refer to an intermediary. The claims speak in terms of a buyer interacting with the system. In two instances, one may interact with the system on behalf of the buyer. One may seek a bid. One may input electronic communications with job data. That's a one-way communication. That's not an intermediary. An intermediary is one who mediates. It's a go-between. That's a one-way communication that's permitted by the claims. It's used in the claims on behalf of doesn't refer to an intermediary. An intermediary can obviously work on behalf of a buyer, but it's not required. It could be an employee. It could be a broker. It could be an agent. It could be somebody's uncle. It doesn't really matter. The claims don't specify who on behalf of is, and they don't need to specify. All on behalf of means is someone other than the buyer who has the authority to submit those communications with the permission or the consent or the authority of the buyer. In other words, in order to give meaning to the phrase on behalf of, one does not need to change or alter the fundamental definition of the word buyer. It's simply unnecessary. The 106 patent seeks to eliminate administrative costs, search and information costs, for example. That's correct. The expanded construction of buyers would include inner workings. Just to clarify, I don't think it's an expanded construction. I think it's the ordinary use of the term buyer, but it would encompass inner workings. Your construction would. Okay. But what inner workings does is exactly what the patent seeks to eliminate, administrative and information. What inner workings does is a broker print between its customers and vendors. It certainly does do that. The heart of the patent is to reduce the administrative expense and teaches a method of maintaining and manipulating a database. There's no dispute that inner workings does do that. The purpose of the patent isn't to replace brokers. It wasn't to replace any specific buyer. Let me take you backwards. Sure. There's no dispute that inner workings does do that. Define that. There's no dispute that inner workings buys print. There's no dispute that inner workings functions as a broker in the marketplace. There's no dispute that once inner workings buys the print, it resells it to its customers. There's also no real dispute that inner workings uses the PPM4 system to make those acquisitions, to make those purchases. In that sense, it is a buyer. Inner workings did reduce its administrative cost by using this technology, by using the specific database and maintaining it in a way that infringes on the patents. The patents don't speak in terms of eliminating a specific type of buyer. It just speaks in terms of reducing the administrative cost of a buyer. Was there a 101 challenge to this? The only challenge that was made at the district court was for indefiniteness and lack of specification. That was denied by the district court. But there's been no validity challenge. There's been no eligibility challenge. The only issue before the court today is simply the claim construction and the district court's entry to summary judgment. Turning to the second issue of the vendor pool limitation, the district court construed the term vendor pool. Let me ask you, before you leave the buyer, you make an argument in your brief about the distinction between an intermediary and an agent, right? Yes. Yes, and you say that that distinction is important here. That argument was not made, I take it, in the original response to the summary judgment motion, according at least to the district court. There was waiver. The district court's argument about waiver doesn't really speak to claim construction. We weren't asking for a rehearing on the construction of the term buyer. In the context of the- Well, let's get directly to the question then. Yes. The district court said you waived that argument, and I didn't see a response in your brief to that waiver finding. Did you not respond to that? Because I didn't see it. There is no waiver with respect to the construction of the term buyer. Before we get there, did you respond to the district court's finding of waiver? The district court's explicitly made a finding of waiver. Above and beyond the challenge of the construction, no. Okay. Thanks. You want to turn to pool of vendors, but if we accept as correct the district court's construction of buyer, you lose on pool of vendors, do you not? If the court accepts the district court's construction of the claim term buyer, that resolves the issue with respect to the 106. It does not resolve the issue with respect to the 143, because the on behalf of language is used in more claims and elements and is therefore broader. You do need to address the vendor pool issue, as the district court did, to get to the 143. With respect to the second issue, the phrase used in the patents is the pool of vendors associated with said buyer. The district court did construe that phrase to mean two or more vendors associated with a buyer that could potentially receive a job solicitation from that buyer. There are two points to make with respect to the pool of vendors. There are two different pools disclosed in the claims and the specification. The first pool is an association that is required between a buyer and a vendor. That is the beginning and the end of the creation of that pool. The second occurs after the comparison of vendor capabilities and job data, and that creates a subset as defined in the claims. I want to make that distinction clear, because when you look through the patent prosecution and specification, references to subset invariably refer to the second vendor pool, not the first. I see that I'm running into my rebuttal time, but are there further questions? No, why don't you save it, and we'll hear from your colleague. Thank you. Good morning. Ann, may I please declare? I can take the issues in either order, obviously. I'm supposed to pick up with vendor pool, where it has the left off, in part because it's directly dispositive of both claims. Our point there is a simple one. The claims require... So, can I ask you just a logistical question to follow up to Judge Wallach's? He was trying to ascertain whether or not if we construe briar and agree with the disfire and agree with the district court, we're done. And the answer was no, because we've got the others. Is it your view that if we construe pool of vendors and affirm the district court, that disposes of both patents? Definitely. That claim element is found in all of the asserted claims from both patents. It obviously applies equally. There are no differences. So that one directly... I don't think there's a dispute about that, but that one directly, no more connecting dots, directly disposes, resolves both. Well, the term buyer, I take it, aside from the question of whether it directly controls the disposition of one of the patents but not the other, it's a very important term with respect to the vendor pool limitation, I take it, so that if buyers construed the way you urge that it be construed, then that influences the vendor pool discussion because something has to be associated with the buyer, which would mean, presumably, that it would not be sufficient for it to be associated with the intermediary or inner workings. Which is why, as a practical matter, I think either claim destruction is dispositive. The pool of vendors directly, the buyer is dispositive because if you recognize that the buyer is the inner workings client, then it should be self-evident that there's no vendor pool associated with the buyer because the buyer being the client has absolutely nothing to do with anything in the system. So with that additional little gap, with that additional little jump, absolutely either claim ends up being dispositive of the other, resolving everything. And the point on vendor pools, there are two ways for us to win. One is construction of buyer, which makes it obvious that whatever they want to call a vendor pool is not associated with him or with his client. The second is that regardless of exactly what the vendor pool limitation entails, there's just not a vendor pool here associated with anyone because the claim language expressly requires that the system be capable of receiving three different electronic communications that establish three different sets of vendors. The first limitation is a communication from vendors establishing vendor records. The second issue here is a communication from a buyer, or in one of the patents, it would have to be half of a buyer, establishing that buyer's specific vendor pool, identifying which vendors to put in that person's vendor pool, and then also storing that system, that data in the system. It's that step before we get to bid data or any other comparisons that just doesn't happen here because the undisputed evidence is that the way interworking system works is that you have something that's analogous to the vendor records and stuff in limitation one. But then once a particular client's bid data is received, there's a particular job to put out, the system will automatically every time compare the job data to the entire set of vendor records from the first limitation. The second limitation of creating an intermediate vendor pool before you get to job data just doesn't exist in any way, shape, or form in the ACCUSE system, which is why it doesn't matter exactly what that limitation entails because it just doesn't exist here, period. And that's why the district court in its term of summary judgment that there is no genuine disputed material fact that based on the employee testimony, for example, of interworking personnel who interact with the system, that the system is not capable of comparing job data to anything other than the full set of vendor records from the first limitation. And that if a client wanted to have its job data compared to a smaller set of vendors, not all of them, the system is simply not capable of doing that. That was the undisputed on-point direct testimony. And so to overcome summary judgment on that, they then would have to present evidence that the interworking employees were wrong or were lying about how their system worked. And they didn't. As the district court found, they presented an entirely conclusory expert affidavit that just said otherwise but didn't give any explanation or support at all. And that's another finding that they didn't dispute in their opening or even their reply briefs. The district court found that the only evidence they tried to put in was not reliable expert testimony because it was conclusory. It didn't try to connect the dots and frankly couldn't have. And again, they haven't disputed that even in their reply brief. So that's another basic waiver issue as to how there's just no genuine disputed material fact here on the pool of vendors issue regardless of who the buyer is and regardless of exactly what that limitation means. Now, on buyer... argument that the pool of certified buyers is a vendor pool. Yeah. The point about certified buyers is this. There are some buyers in the system that are certified status and there are different types of status. So if you're certified gold, that gives you what the documents refer to as a quote preference. So when all the bidding is done and it's time to select a winning bidder for a project, certification can influence whether you win. But it doesn't change the fact that every vendor from that step one vendor records, whether they're certified or not certified, whether they have one status or another, they're all compared to the job data when the job data comes in at the third limitation. So in other words, when they argue that vendors who are not certified are not considered, the services aren't run against them, that's just wrong as a factual matter because that certification just goes to preference of being chosen, not to who's actually run in these comparisons. And one thing I can point you to for that in the appendix, and because there have been conclusions around this, there's not a big record on it, but if you look at one of the documents that they point to, this is appendix page 7173, which is, again, the main thing that they point to, or at least one of the main things that they point to, what it describes is the certification process being a, quote, preference. It doesn't say these people aren't searched. I'm sorry, 7174. I'm sorry, what was the page? 7174. 7174. In the appendix. What it says, sort of the second line down, is it is necessary we always give preference to certified vendors in PPM4. And then it explains a little, put this down, there are different levels of vendor certification, gold, pending, high quality, refund available. So what they're pointing to here, it just confirms my point, which is that this reflects whether someone has a preference for being considered, it doesn't have any bearing at all on who the searches are run against. The only evidence that goes directly to that, as the district court found, is the employee testimony that's spot on, that everyone in those vendor records from step one is then automatically compared to the job data when it comes in, versus the third limitation. The second limitation just doesn't exist. Now, the other point the district court made about this is that even if the system was configured so that automatically, you'd have vendor records, but you would automatically run a search every time against only some of the vendors, those with certain statuses, even if that was true, the district court pointed out, that theory would still eviscerate the second claim limitation because the second claim limitation requires the system be capable of receiving an email from a buyer or on behalf of the buyer that specifies whoever that buyer wants as their vendor pool, whether it be all somewhere in between, and that's then stored in the system. And that step, that separate capability, that separate step, wouldn't exist, as the district court pointed out, even if they were factually right about this point, which they're not. Let me take you back to your gold certification. As I understand your argument, correct me if I'm wrong, if, let's say gold certification was awarded because, speaking hypothetically, because the gold certified people promised to drop their price by 10%, you would simply factor that number into the formula, and it would still be compared against those non-gold certified people, and if they came in at a much lower price, they'd win the bid, if that was the only factor involved. Exactly. And there's, if you look at the, back to 7174, where it says there are different levels of vendor certification, if you look at the bottom one, it's something about, this goes to pricing, which is confidential, but not all that different from something you just said. And the point there is that, yes, the idea is that if you've got a preference, okay, that gives you a leg up in being chosen at the end of the day, but it doesn't mean that we don't consider other people, and it's exactly the way the system works. Instead, everyone who's in step one, the vendor records, gets considered against all job data at step three. That second limitation just doesn't exist. Is there any evidence that at any point somebody who's not gold certified gets an award, that is, that they win a contract? In terms of the, I don't believe that there's a record at that level of detail about, you know, the actual interworking system at this point. Because that would be dispositive right there, if you hear what I'm saying. No, it would certainly, you know, provide that much more evidence on this point for us. But the point is that on summary judgment, we came forth with direct on-point testimony, which the district court, you know, and they had to come back with something other than sheer, you know, conjecture and conclusory expert testimony, especially given that they haven't been disputed, the district court's fact-finding that their expert testimony wasn't reliable enough to consider. Now, on the buyer point, then, the point, I don't have a whole lot to add to what the court obviously already understands about it. There are two dictionary definitions of buyer. The question is which applies more naturally in this context. And contextually, in terms of deciding which is more natural, we have three main points. The first is, as Chief Judge Prost pointed out, the claims refer to a buyer or someone acting on behalf of the buyer. Most naturally, that suggests that there is a difference between the two. Second, the claims here also refer to custom-made goods and services. And the specification, you know, in elaborating on that, then makes a number of important statements, such as this shows that the buyer is the person for whom the goods are being custom-made. For example, it refers to the buyer's attributes associated with a custom-made good or service. That's, for example, on page A98, column 4, line 67 to A98, at the top of the next page. The point is, and there are a number of other references to a buyer's requirements, a buyer's procurement needs, all in the context of custom-made goods or services. At that point, I mean, it should be fairly clear that the requirement, the need, the attribute is of the person getting a custom-made service, it's not an intermediary. And the third point is simply, this is one that I think Judge Wallach made, which is the whole point of this invention. In this respect, this is similar to this court's decision in the Lockwood v. American Airlines case I did in our brief. The whole point of the invention is to try to reduce intermediaries. And therefore, since we're talking about reducing lines and intermediaries, it was very natural for these patents to be written from the perspective of the person who would be interacting, who is contemplated to be interacting directly with the system, which is to say the buyer, the person who's trying to acquire custom-made goods. The American Airlines case is similar because this court explained that the word was customer. And the court explained that the whole point of the invention was to cut out travel agents by allowing customers to interact directly with an automated system. So in that context, it didn't make any sense to read the word customer to include a travel agent, even if a travel agent could be said to be a customer in the sense that they're requiring a good or service. And finally, Chief Judge Prost had asked about 101. We did put it in our answer, but because I think it's a final judgment before Alice against CLS Bank, it has not yet been litigated in this case. If there were for any reason to be a remand, I mean, obviously the first thing we would do would be to file what we would view as an airtight motion under that, given that the claims here, it's an age-old business transaction, method of organizing human behavior on general-purpose computers. The point of the spec actually says that it contemplates the use of a, quote, conventional general-purpose computer with a, quote, internet. And if anything is patent-ineligible under BySafe against Google, UltraMercial against WildTangent, it would clearly be this. But we haven't litigated that yet because it's when the case went to final judgment. Thank you. Thank you. Let me address a couple of points briefly. We don't dispute that the court must distinguish between the phrase on behalf of and the phrase buyer. Clearly, the court must give meaning to both phrases. It's just simply unnecessary to redefine buyer as it's ordinarily used to give meaning to the phrase on behalf of. The argument really isn't any more complicated than that. It is true, though, that one must have a clear understanding of what buyer means in order to have any kind of understanding of what the vendor pool requirement means. Our contention, obviously, is that buyer means one who makes a purchase. And therefore, the vendor pool requirement only requires an association to be made between the buyer and the vendors. The district court didn't hold that, though. The district court found that there was no association here because a subset was not created. Those are the district court's words. Eight times, the district court used the phrase subset. And I'd submit to the court that that is simply not a requirement of this vendor pool limitation. It is a limitation, no doubt about that. It is required as part of the claims. There is an association that must be made, some real association between a buyer and a vendor. That's the very heart and purpose of the patent. But it does not require, in any sense of the word, that the vendor pool that is created be left in the entire database. If a buyer chooses, if a buyer vets and associates themselves with the entire database, that's perfectly adequate and fine. That was the district court's finding, and that is at the heart of the error of what the district court found. Going back to the evidence cited by Pelley, the district court found that InterWorkings only relied on the Ipsy Dixit of its expert. That is, our expert's report was unsupported. But on the face of the actual report, it does cite to InterWorkings' own documents and statements. And to the very document that Pelley referenced, 7174, it notes, in addition to the certification requirement, that there are vendors who are not active in the database. Not active. Those are not the witnesses' words. Those are InterWorkings' own documents' words. We are entitled, in summary judgment, to all inferences in our favor that a reasonable fact-finder could find. We're not required to marshal all of our evidence and try the case on the papers. But the district court's error was that it simply disregarded the evidence that we cited and the expert's conclusions based on those citations. Weighing the evidence for credibility determination isn't the province of the court in summary judgment. That's the sole province of the jury. And that is, of course, the second major point of error. Our primary contention was always that a buyer means a purchaser. Even InterWorkings, in this particular context, could be considered an ultimate purchaser. They do, quite literally, buy the print, as that word is used in the English language. They are the oligarch of the vendors. They are the only legal oligarch. That's what they tell their shareholders and the Securities Exchange Commission. They are an actual buyer. They are an ultimate buyer. It certainly is with respect to the contract that's been consummated in their traditional system. Those are the only arguments that I have in response to those that were addressed by InterWorkings. But if the court has any other questions, I'm happy to answer them. I do have a question, and I wanted to wait so I didn't use up your time regarding IW with a question about Circuit. But I do have a question about Circuit. Yes. Let's assume that the court's claim construction is correct with respect to the vendor capability data limitation. You have an argument at the end of your brief that nonetheless there's still at least a sufficient issue of material fact that you should have had a trial on that. Correct. Could you flesh that out for me? Because I'm not sure what exactly you're relying on in the evidence to support that contention. Sure. The evidence as to Circuit's capabilities. I understand. Let me address two points with respect to that, Your Honor. The first is that if the court accepts the district court's construction, one must have an understanding that the court didn't really expound upon what the phrase goods sold actually meant. Now, the court found, I believe, in the entry of its... Let's assume for present purposes that it includes not only standardized goods but custom goods as well. If the phrase goods sold refers to... Well, I'm not exactly sure what the court means by custom goods. The argument that we're making is that there is a distinction between goods sold, that is an actual thing that is ready to be sold, and a category of products that one has the capability of producing. If, for example, I order envelopes on Amazon, Amazon is selling me a goods, sell me some envelopes. If I am contracting with a vendor to make my custom Christmas cards, I need to know that the vendor has the capability of making the cards and the envelopes. That's an essential requirement, to know that the vendor can actually do what I'm asking them to do. It is not a goods sold. I'm not buying those things on their own. It is a capability of the vendor to make the goods. What are the categories of circuits performance, the evidence of the categories of circuits performance on which you rely? If I could refer the court to our brief. The opening brief or the... The opening brief, Your Honor. Well, you're looking under the UCC. If I buy Christmas cards, it's a contract for services rather than a contract for goods. No, under the UCC, if you're buying Christmas cards that are pre-made, it would be a contract for goods sold. I want custom Christmas cards, still a contract for goods. Well, under the interpretation of the UCC, that may be the case. I'm not sure exactly how that has bearing here on the analysis of the claim or the purported disclaimer that was made in the prosecution. But to answer your question, Judge Bryson, if you look on page 57 of our brief, it has citations comparing the product categories that are identified in the preferred embodiment of our patent with the circuit supplier types and supported products that are referenced... Right. Now, do you rely in the district court, as I read your papers in the district court, on the circuit support products but not on supplier types? Well, it was both. Well, let's be sure. I went back and I read your response to summary judgment and also your motion to vacate the judgment, and I didn't see any reference to the supplier types category. I saw only reference to support products. That's not my recollection. Are you sure that you made that argument? I take your honor at your word if that's the case. It's not my recollection. Well, I couldn't be mistaken. I could have missed it somewhere, or there may be some other document. But I saw nothing that referenced supplier types. That may be the case, Your Honor. Again, that's not my recollection, and I cannot cite to the court at this moment where in that briefing that would occur. But with respect to supported products, those match up almost identically in some instances with the product categories that are listed in the preferred environment. So therefore, our contention is that even if the court accepts that there was a disclaim on prosecution history and that goods sold was eliminated from the vendor capability category, nevertheless, there is evidence in the record to support the conclusion that Circuit does, in fact, have vendor capability data in its system. Thank you. Thank you.